**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**LISA DODSON JONES**                                                        **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 3:18-cv-145-RP**

**MERCHANTS & FARMERS BANK OF**
**HOLLY SPRINGS, MISSISSIPPI, et al.**                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**
**ON MOTIONS TO DISMISS**

This matter is before the court on the defendants' Motion to Dismiss State Law Claims
(Docket 42) and the defendants' Partial Motion to Dismiss ERISA Claims (Docket 50).  The
defendants argue that all the plaintiff's state law claims should be dismissed because they are
preempted by ERISA, and that all her ERISA claims other than her claim for retirement benefits
should be dismissed on various other grounds.  The court finds both motions are well taken and
should be granted.

BACKGROUND

The plaintiff began working for Merchants & Farmers Bank in 1984.  In 2001 the bank
established a Supplemental Executive Retirement Plan ("SERP") and invited the plaintiff to
participate, which she did by entering a SERP Participation Agreement that incorporated the
SERP.  The plaintiff and the bank also entered an Endorsement Split Dollar Insurance
Agreement ("Split Dollar Agreement") providing for death benefits, for which the plaintiff
executed a Beneficiary Designation.  Both plans were employee benefit plans subject to the
Employee Retirement Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

The plaintiff's SERP Participation Agreement provided for vesting in her SERP benefits
upon reaching the normal retirement age of 65 years or upon a "change of control" of the bank.

1

Under the agreement, if the plaintiff were to become vested in her benefits by virtue of a change of control, and if she were to retire before reaching age 65, she would not begin receiving her retirement benefits until she reaches age 65.

In 2006 Lanier Robinson, Jr., a major shareholder of the bank's holding company, passed away. In 2007 the board of directors voted to allow for full vesting in SERP benefits after 25 years of service.

In 2012 the bank adopted a SERP Restatement, and the plaintiff entered a SERP Restatement Participation Agreement incorporating the restatement and containing the additional vesting provision that was the subject of the board's 2007 resolution. The agreement provided further that upon the plaintiff's separation of service following a change of control, she shall be entitled to her benefits as if her separation was through normal retirement at age 65. In other words, if the plaintiff were to retire before reaching the age of 65 and following a change of control, she would be entitled to begin receiving her benefits immediately.

After 33 years of employment at the bank, the plaintiff retired in 2017 at the age of 54. In response to her formal request for a determination of her retirement benefits, the SERP plan co-administrators Gregory Taylor (the bank's president) and Kathy Ritts determined that Lanier Robinson's death in 2006 did not constitute a "change of control" for plan purposes, and that even if it had, its effect would be governed by the plaintiff's participation agreement in effect at that time. Under that agreement, a change of control would have resulted in a vesting of the plaintiff's benefits, which she could begin drawing at age 65. The administrators determined that in any event, under the plaintiff's participation agreement she subsequently entered in 2012, in the time since which there had been no change of control, and although she is vested in her

benefits by virtue of her more than 25 years of service, she is not entitled to begin receiving her benefits until reaching the age of 65.

Having exhausted her administrative remedies with respect to her claim for SERP benefits, the plaintiff brings this action under ERISA to enforce her rights to benefits, claiming she became entitled to begin receiving her SERP benefits immediately upon her retirement. In addition, the plaintiff brings a number of other ERISA claims alleging various breaches of fiduciary duty and violations of ERISA disclosure requirements, as well as a number of state law claims. The plaintiff names as defendants the bank, the SERP, the board of directors, the plan administrators, and Gregory Taylor individually. The plaintiff has twice amended her complaint, and the operative pleading is now the Second Amended Complaint. Docket 33.

The defendants' motions to dismiss will be discussed in turn below. Because the plaintiff's ERISA claims are set forth in Claims 1 through 15 of the Seconded Amended Complaint and the plaintiff's state law claims are set forth in Claims 16 through 19 of the Second Amended Complaint, the court will discuss the motion pertaining to the ERISA claims first.

<u>PARTIAL MOTION TO DISMISS ERISA CLAIMS</u>

In this motion, the defendants move to dismiss all the plaintiff's ERISA claims except her claim for immediate SERP benefits. The defendants argue as an initial matter that the SERP plan is a "top hat" plan that is exempt from ERISA's fiduciary provisions, and therefore all the plaintiff's ERISA claims for breach of fiduciary duty fail as a matter of law. The defendants argue further that even if the SERP plan is not a "top hat" plan, all the plaintiff's ERISA claims other than her claim for immediate SERP benefits should be dismissed nonetheless on various other grounds, including failure to state a claim, failure to exhaust administrative remedies, and/or failure to bring the claim before expiration of the limitations period.

## Standard of Review

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996); *Am. Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995) (*quoting Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir. 1994)). In deciding whether dismissal is warranted, the court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982).

Under Federal Rule of Civil Procedure 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material that is pertinent to the motion."

> [F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it. Numerous cases have recognized this authority.

5C Fed. Prac. & Proc. Civ.3d § 1366 (citing *e.g., Isquith v. Middle South Utils., Inc.,* 847 F.2d 146, 193 n. 3 (5th Cir.1988), *cert. denied* 488 U.S. 926). If the court considers matters outside the pleadings in ruling upon a Rule 12(b)(6) motion to dismiss, the court must convert the motion to one for summary judgment. *Tuley v. Heyd,* 482 F.3d 590, 592 (5th Cir.1973).

Here, the parties have presented and relied upon matters outside the pleadings in support of their arguments, and as discussed below, the court has considered those matters in resolving

some of the issues herein, such as whether the SERP constitutes a "top hat" plan that is exempt from ERISA's fiduciary provisions. To the extent the court has considered matters outside the pleadings, the defendants' motion is converted from a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment.

The court recognizes that the parties are entitled to 10 days' notice that a Rule 12(b)(6) motion is being treated as a motion for summary judgment. *Hickey v. Arkla Industries, Inc.,* 615 F.2d 239, 240 (5th Cir. 1980). However, it is not necessary that the court give 10 days' notice after it decides to treat a Rule 12(b)(6) motion as one for summary judgment, "but rather after the parties receive notice that the court could properly treat such a motion as one for summary judgment because it has accepted for consideration on the motion matters outside the pleadings, the parties must have at least ten days before judgment is rendered in which to submit additional evidence." *Washington v. Allstate Insurance Company,* 901 F.2d 1281, 1284 (5th Cir. 1990) (quoting *Clark v. Tarrant County, Texas,* 798 F.2d 736, 746 (5th Cir. 1986)). The proper question, therefore, is whether the plaintiff had ten days' notice after the court accepted for consideration matters outside the pleadings. *Washington,* 901 F.3d at 1284. A plaintiff is on notice that the trial court could treat the motion to dismiss as a motion for summary judgment "[a]t least from the date [the plaintiff] himself submitted to the court matters outside the pleadings." *Id.* (noting plaintiff had also addressed summary judgment requirements in opposition to defendant's motion to dismiss).

In this case, in her January 13, 2019 response to the subject motion to dismiss, the plaintiff incorporated by reference her affidavit submitted in connection with a previous motion and relied on the facts stated in the affidavit in opposing the subject motion to dismiss on the grounds that "there are genuine issues of material fact demonstrating the ERISA plan in question

is not a top hat plan." Docket 59 at 2. As such the plaintiff has been on notice the court could treat the subject motion to dismiss as a summary judgment motion at least from the date the plaintiff herself submitted to the court matters outside the pleadings and addressed the motion using the summary judgment standard.

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Rule "mandates the entry of summary judgment […] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. If the moving party satisfies this burden, the nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citation omitted).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The court will first address the "top hat" issue.

## ERISA Claims for Breach of Fiduciary Duty – Top Hat Exemption

The defendants contend that the SERP is an ERISA "top hat" plan exempt from the fiduciary duty requirements applicable to typical ERISA plans.  On this basis, the defendants argue that all ERISA claims for breach of fiduciary duty in the Second Amended Complaint should be dismissed.  The court agrees, at least as to those fiduciary duty claims pertaining to the SERP plan.

In *Reliable Home Health Care Inc. v. Union Central Insurance Company*, the Fifth Circuit explained that

> ERISA's coverage provisions provide that ERISA shall apply to any employee benefit plan with certain enumerated exceptions. A plan falling within such exceptions is one "which is unfunded and ... maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). These plans, also known as "top hat" plans, are exempt from ERISA's fiduciary provisions as well as its participation, vesting, and funding provisions. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1).

*Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 512 (5th Cir. 2002). To qualify as top hat plan exempt from ERISA's fiduciary duties, a plan "must be (1) unfunded and (2) maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Id.*

The issue of whether a plan qualifies as a 'top hat' exemption is a question of law, although the factors underlying the top hat exemption – such as selectivity and high compensation – can constitute fact issues. *Tolbert v. RBC Capital Markets Corp.*, No. CIV.A. H-11-0107, 2015 WL 2138200, at *3 (S.D. Tex. Apr. 28, 2015) (citing *Tolbert v. RBC Capital Markets Corp.,* 758 F.3d 619, 627 (5th Cir.2014) ("The resolution of the dispute over the 'top hat' exemption may require factual determinations regarding, for example, selectivity and high compensation").

There is no dispute in this case that the SERP plan is unfunded. As to the second factor, there likewise appears to be no genuine dispute that the primary purpose of the plan is to provide deferred compensation. The question, then, is whether the plan involves "a select group of management *or* highly compensated employees." (emphasis added). The court finds the facts are sufficiently developed in the parties' submissions to answer this question in the affirmative.

Although the Fifth Circuit has provided no definitions or guidelines for considering the "selectivity" factor, a number of circuits have required consideration of such factors as (1) the percentage of the total workforce eligible to participate in the plan, (2) the nature of their employment duties, (3) the compensation disparity between top hat plan members and non-members, and (4) the actual language of the plan agreement. *Tolbert*, 2015 WL 2138200, at *9 (citations omitted). These factors are to be considered holistically, and no single factor carries more weight than any other in determining whether a plan meets the top hat exemption. *Id.*

As to the percentage of the total workforce eligible to participate in the plan, the submissions of the parties establish that at the time of the plaintiff's retirement, of the bank's 36 full-time employees, only she and the defendant Gregory Taylor – constituting 5.56% of the total workforce – were eligible to participate in the plan. "Although there is no bright-line rule on what constitutes a 'select group of management or highly compensated employees,' plans that limit participation to 15% or less of the workforce have consistently been treated as top hat plans." *Cramer v. Appalachian Regional Healthcare, Inc.,* No. 5:11-49-KKC, 2012 WL 5332471, at *2 (E.D. Ky. Oct. 29, 2012) (quoting *Callan v. Merrill Lynch & Co., Inc.,* No. 09-CV-0566 BEN (BGS), 2010 WL 3452371, at *10 (S.D. Cal. Aug. 30, 2010)).

Looking instead to the time the plan was adopted in 2001, the affidavits of Kathy Ritts and Gregory Taylor – the current plan administrators – state that at the time there were 28 full-

time employees, of whom only four – constituting 14.29% of the workforce – were eligible to participate in the plan. The court recognizes that the plaintiff's affidavit states there was an additional plan participant in 2001 – Chairman of the Board Lanier Robinson – and that this statement is disputed by the plan administrators' affidavits, but the court does not consider this to be a genuine issue of material fact. Although the court suspects the plan administrators and not the plaintiff would ultimately be proven correct on this issue, taking the plaintiff's statement as accurate as the court must at this stage, the five participants at plan adoption would constitute only 17.86% of the total workforce if Robinson was among the 28 full-time employees, or 17.24% if the addition of Robinson made 29 full-time employees. Further, it is undisputed that the percentage at adoption – whether it was 17.86%, 17.24% or 14.29% – only decreased over time; that at the time of the plaintiff's retirement the percentage was 5.56%; and that presently Gregory Taylor is the only eligible employee participant. The court finds this factor weighs in the defendants' favor.

As to the nature of the plan participants' employment duties, "top hat plan participants, unlike ordinary pension plan participants, are typically high-ranking management personnel" who "are therefore better equipped than ordinary plan participants to effectively protect their interests in the employee benefits bargaining process." *Spacek v. Maritime Association*, 134 F.3d 283, 296 n.12 (5th Cir. 1998), *abrogated on other grounds by Central Laborers' Pension Fund,* 541 U.S. 739, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004).

According to the plaintiff in this case, the plan does not constitute a top hat plan because she was not a highly compensated employee, she was not an executive officer when the plan was adopted, and she was never involved in the negotiation of the terms or amendments of the plan. However, the plaintiff does not cite – and the court is unaware of – any authority requiring that

each individual plan participant meet the top hat criteria. To the contrary, the jurisprudence of which the court is aware rejects such a requirement. *See, e.g., Alexander v. Brigham & Women's Physicians Organization, Inc.,* 513 F.3d 37, 47 (1st Cir. 2008) (rejecting argument that every plan beneficiary must possess bargaining power sufficient to influence terms of plan); *Demery v. Extebank Deferred Compensation Plan (B),* 216 F.3d 283, 289 (2d Cir. 2000) (stating "if a plan were principally intended for management and highly compensated employees, it would not be disqualified from top hat status simply because a very small number of the participants did not meet the criteria, or met one of the criteria but not the other"); *Tolbert v. RBC Capital Markets Corporation,* No. H-11-2017, 2015 WL 2138200, at *8 (S.D. Tex. April 28, 2015) (rejecting argument that each participant must have requisite bargaining power).

The submissions of the parties in this case establish that at the plan's outset in 2001, the eligible participants included at least Gregory Taylor, President of the bank; Walker Hurdle, Branch Manager; Deborah Shaw, Cashier; and the plaintiff, Assistant Cashier. According to the plan administrators, the plaintiff also held the position of Electronic Data Processing Officer. If the plaintiff is to be believed as she must at this stage, the eligible participants also included Lanier Robinson, Chairman of the Board. Per the plaintiff's affidavit, she was promoted in 2004 to Vice President of Operations and Compliance Officer and was designated as an Executive Officer, and Deborah Shaw was promoted to Vice President and Cashier and was designated as an Executive Officer as well. The plaintiff remained an Executive Officer until her retirement in 2017, at which time she held the positions of Senior Vice President, IT Officer, and Compliance Officer. The court is satisfied that the plan participants consisted principally – and, for most if not all of the relevant time period, exclusively – of high-ranking management personnel who

were better equipped than ordinary plan participants to effectively protect their interests in the employee benefits bargaining process. This factor weighs in the defendants' favor.

As to the compensation disparity between top hat plan members and non-members, to qualify as a top hat plan, there must be a significant disparity between the average compensation of the top hat group and the average compensation of all other employees. *Simpson v. Ernst & Young,* 879 F.Supp.802, 816 (S.D. Ohio 1994) (quoting *Belka v. Rowe Furniture Corp.,* 571 F.Supp. 1249 (D. Md. 1983)). Courts have found that a 2:1 disparity is sufficient. *Cramer v. Appalachian Regional Healthcare, Inc.,* No. 5:11-49-KKC, 2012 WL 5332471, at *4 (E.D. Ky. Oct. 29, 2012) (quoting *Callan v. Merrill Lynch & Co., Inc.,* No. 09-CV-0566 BEN (BGS), 2010 WL 3452371, at *9 (S.D. Cal. Aug. 30, 2010)).

The plaintiff argues she was not a highly compensated employee because she never earned the minimum amount to be considered such by the IRS under 26 U.S.C. § 414(q)(1)(B). However, the defendants point out that the applicable IRS regulation, 26 C.F.R. § 1.414(q)-1T, states the IRS definition is not determinative unless it is explicitly incorporated by reference in the plan, which is not the case in this matter. In any event, as discussed above, whether the plaintiff individually met the criteria for top hat plans is not determinative of whether the plan qualifies as a top hat plan.

According to the plan administrators, in 2001 the average annual salary of the four plan participants was $54,115.78, more than twice the average annual salary of the other full-time employees, which was $21,257.31. Using the plaintiff's figures for the 2001 salaries of the plan participants, which she states included Lanier Robinson, the court calculates the average annual salary of those participants was $68,359.42, which results in an even greater disparity. Had the plaintiff not retired in 2017, the average annual salary, including approved bonuses, of the two

plan participants for that year (the plaintiff and Gregory Taylor) would have been over triple the average annual salary of the non-participant employees. The court is satisfied there was a significant compensation disparity between plan members and non-members. This factor weighs in favor of the defendants.

Finally, as to the actual language of the plan agreement, the agreement in this case states it is "intended to qualify as an ERISA 'top hat' plan maintained primarily for purposes of providing benefits for a select group of management and highly compensated employees." Clearly this factor weighs in favor of the defendants.

For the above reasons, the court finds there is no genuine issue as to any material fact bearing on the defendants' assertion that the subject ERISA plan is a "top hat" plan that is exempted from ERISA's fiduciary provisions. The defendants are therefore entitled to judgment as a matter of law on all the plaintiff's ERISA claims for breach of fiduciary duty that pertain to the SERP plan, and those claims will be dismissed.

Further, as discussed below, even if the SERP plan is not a "top hat" plan and therefore is not exempt from ERISA's fiduciary provisions, each of the plaintiff's ERISA claims other than her claim for SERP benefits is subject to dismissal on other grounds.

### Claims 1 through 15 of the Seconded Amended Complaint

All the plaintiff's ERISA claims are set forth in Claims 1 through 15 of the Second Amended Complaint and are discussed below in the order in which they are discussed in the parties' briefs.

**Claim 1**

This claim pertains to the Split Dollar Agreement and the alleged conflict between the amount of death benefits to which the plaintiff's designated beneficiaries would be entitled under the language of the agreement, on one hand, and the amount of death benefits to which her beneficiaries would be entitled under the language of her beneficiary designation, on the other hand. The plaintiff alleges that using the language of the beneficiary designation (which she alleges the bank would do), the bank would keep all but $150,000 of the death benefits, whereas using the language of the agreement (which controls in the event of a conflict), the bank would keep only an amount equal to the policy's cash surrender value, and the plaintiff's designated beneficiaries would receive an amount much greater than $150,000. In Claim 1, the plaintiff alleges the defendant's "intentionally allowed the use of two Split Dollar documents . . . with two different benefit levels for the purpose of short-changing plan beneficiaries." Doc. 33 at 26. The plaintiff claims it was not until 2016 that she received an annual benefit statement showing the death benefits payable to her beneficiaries in the amount of $150,000, which she claims is incorrect. She alleges the defendants' course of conduct constitutes fraud and breach of fiduciary duty under ERISA.

The defendants deny there is a conflict between the two documents, and they argue in any event that this claim should be dismissed for the plaintiff's failure to exhaust her administrative remedies, as she made no claim referencing the Split Dollar Agreement in the administrative proceedings in this matter. In response the plaintiff does not dispute this fact, but she argues her claim is a statutory claim for breach of fiduciary duty and therefore it is not subject to the exhaustion requirements that apply to contractual claims for denial of benefits under 29 U.S.C. § 1132(A)(1)(b). The defendants argue in reply that the plaintiff is merely portraying her claim

as one for breach of fiduciary duty when it is actually a claim for denial of benefits.  The court agrees with the defendants.

The exhaustion requirement applies to ERISA fiduciary claims that are disguised benefits claims.  *Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir. 1990); *Galvan v. Pension Benefit Plan,* 204 F.Appx. 335, 339 (5th Cir. 2006).  "[T]he exhaustion requirement would be rendered meaningless if plaintiffs could avoid it simply by recharacterizing their claims for benefits as claims for breach of fiduciary duty."  *Simmons*, 911 F.2d at 1081 (citing *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir. 1988)).  "Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."  *Harrow v. Prudential Insurance Company of America,* 279 F.3d 244, 253 (3d Cir. 2002) (citing *Drinkwater,* 846 F.2d at 826).

A plaintiff must exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court "where the basis of the claim is a plan administrator's denial of benefits or an action closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits."  *Smith v. Snyder,* 184 F.3d 356, 362 (4th Cir. 1999).  A claim for breach of fiduciary duty "is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA."  *Harrow,* 279 F.3d at 253-54 (quoting *Smith,* 184 F.3d at 362).

In Claim 1, the plaintiff essentially asks the court to interpret the Split Dollar Agreement and the Beneficiary Designation and resolve the alleged conflict in the plaintiff's favor, which would result in greater death benefits payable to her beneficiaries.   Because the resolution of this claim rests upon an interpretation and application of the ERISA-regulated plan rather than upon

an interpretation and application of ERISA, the claim is actually one for benefits and is subject to the exhaustion of remedies requirement.

The plaintiff argues the claim is not a claim for benefits because such a claim would arise only after her death. However, actions for benefits under ERISA include, by definition, actions to "clarify [one's] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(A)(1)(b). This is precisely what Claim 1 is, and it will be dismissed for failure to exhaust administrative remedies.

### Claims 2, 3, and 11

In Claims 2, 3, and 11, the plaintiff alleges the defendants violated ERISA by failing to provide her with copies of the Split Dollar Agreement documents, the 2001 SERP documents, and the 2012 restated SERP documents, respectively. However, under 29 U.S.C. § 1024(b)(4), the plan administrator is obligated to furnish such documents only "upon written request of any participant or beneficiary." *See also Babin v. Quality Energy Services, Incorporated,* 877 F.3d 621, 624 (5th Cir. 2017); *Fisher v. Metropolitan Life Insurance Company,* 895 F.2d 1073, 1077 (5th Cir. 1990). Because the plaintiff has failed to allege in the Second Amended Complaint that such written request was made, the defendants argue these claims should be dismissed for failure to state a claim.

In response the plaintiff argues that in addition to Claims 2 and 3 seeking statutory penalties for failure to provide plan documents, all three claims allege breach of fiduciary duty which, unlike claims for statutory penalties, do not require a written request for the documents. Essentially, the plaintiff argues that ERISA's fiduciary duty provisions impose disclosure obligations above and beyond the specific obligations set forth in the disclosure provisions. The Fifth Circuit has considered and rejected this argument.

In *Ehlmann v. Kaiser Foundation Health Plan of Texas*, citing the general principle of statutory construction that more specific provisions in a statute govern over those generally worded, the Fifth Circuit concluded it "should not add to the specific disclosure requirements that ERISA already provides." *Ehlmann,* 198 F.3d 552, 555 (5th Cir. 2000) (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)). "Today we heed the Supreme Court's warning that where ERISA provides a section specifically dealing with a particular information scheme, courts should not supplement that scheme by reference to a far away provision in another part of the statute." *Id.* at 555-56 (citing *Curtiss-Wright v. Schoonejongen,* 514 U.S. 73, 84, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995)). This is the case notwithstanding the fact that ERISA's specific reporting and disclosure provisions set forth the obligations of administrators but not those of fiduciaries, "given that Congress was so specific in detailing the reporting requirements of administrators, its failure to address the same regarding fiduciaries suggests that the omission was intentional and that ERISA imposes no reporting requirements outside those specifically enumerated at 29 U.S.C. §§ 1021-1031." *Id.* at 555 n.4. The plaintiff's claims for breach of fiduciary must therefore fail.

As to her claims for statutory penalties and the requirement of a written request for documents, the plaintiff's response references her January 30, 2017 letter to the Board of Directors – attached as an exhibit to the Second Amended Complaint – stating she had made multiple requests for plan documents to no avail. However, the letter itself contains no such request, nor does it indicate that such requests were made in writing. The plaintiff also states in her response that her husband made a written request for plan documents, but even if such a request could suffice, this allegation is absent from the Second Amended Complaint.

The plaintiff's response states further that her counsel is seeking to retrieve emails sent by the plaintiff to Gregory Taylor regarding documents, and she requests leave to amend the Second Amended Complaint so that she can expressly allege that she made written requests for plan documents. However, Local Uniform Civil Rule 7(b)(3)(C) provides, "A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." The plaintiff has filed no motion requesting leave to so amend the Second Amended Complaint. Even if the plaintiff had done so, her motion likely would not be well taken.

The plaintiff has amended her complaint multiple times previously, and the deadline for motions to amend passed on October 19, 2018. Docket 22. Federal Rule of Civil Procedure 16(b) provides that the scheduling order "may be modified only for good cause and with the judge's consent." This rule requires a party "to show that the deadlines cannot reasonably be met, despite the diligence of the party needing the extension." *Marathon Financial Insurance, Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters, LLC v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003)). The court doubts the plaintiff could have shown good cause why the deadline in this case could not reasonably be met despite the plaintiff's diligence.

For the above reasons, Claims 2, 3, and 11 will be dismissed.

### Claim 4

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by failing, upon Lanier Robinson's death in 2006, to determine whether his death effected a "change of control" pursuant to the SERP plan. Pointing out that the plaintiff cites no plan provision requiring that such a determination be made at that time and that the plaintiff provides no

explanation or authority for why the failure to do so was a breach of fiduciary duty, the defendants argue there is no basis for relief in any event because the administrators ultimately made such a determination in response to the plaintiff's request for determination of benefits, determining Mr. Lanier's death did not constitute a "change of control." The court agrees with the defendants.

Even if prudence required an immediate determination, the plaintiff has not alleged – and the court cannot surmise – what harm resulted to her or the plan from the administrators' failure to make that determination until later. To the extent the plaintiff brings this claim under Section 1132(a)(2) for relief under Section 1109, "even if the Defendants' actions were procedurally imprudent, a fiduciary is liable only for 'losses to the plan resulting from' that breach." *Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018) (quoting 29 U.S.C. § 1109(a)). The plaintiff's "duty-of-prudence claim cannot rest solely on the Defendants' procedural failings." *Id.* In the Second Amended Complaint's prayer for relief, the plaintiff seeks benefits and other relief only for herself and not for the plan. The "loss to the plan" language of § 1109 limits claims for breach of fiduciary duty "to those which inure to the benefit of the plan as a whole rather than to individual beneficiaries." *McDonald v. Provident Indemnity Life Insurance Company,* 60 F.3d 234, 237 (5th Cir. 1995) (citing *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). *See also Total Plan Services, Inc. v. Texas Retailers Association,* 932 F.2d 357, 358 (5th Cir. 1991) (affirming dismissal of breach of fiduciary claim where plaintiff sought recovery of its own losses rather than losses suffered by ERISA plan itself).

To any extent the plaintiff's alleged harm is a denial of her claim for benefits, because the plaintiff has adequate relief available through her rights to sue the SERP directly for improper

denial of benefits (which she has done in this action), a claim for breach of fiduciary duty is inappropriate. *Tolson v. Avondale Industries, Inc.,* 141 F.3d 604, 610 (5th Cir. 1998) (holding breach of fiduciary duty claim for equitable relief inappropriate and unviable where plaintiff could sue plan directly for improper denial of benefits).  Claim 4 fails to state a claim and will be dismissed.

### Claim 5

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by failing, after the board passed a resolution in 2007 to provide vesting of retirement benefits after 25 years, to properly amend the plan documents within a reasonable time thereafter.  The defendants argue that any such claim is moot because this vesting provision was included in the plaintiff's 2012 SERP Restatement Participation Agreement, and the defendants have not disputed that she became vested after 25 years.   The court agrees.  Even if prudence required a prompt amendment of the plan documents, the plaintiff suffered no harm as a result, and even if she had, because she may sue the plan directly for improper denial of benefits, her claim for breach of fiduciary duty is inappropriate and unviable.  Claim 5 will be dismissed for failure to state a claim.

### Claim 6

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by making promises to her at a 2011 board meeting relative to her retirement benefits that the defendants had no intention of keeping, and by not informing the plaintiff that their promises were not to be relied upon by her in considering her offer of employment elsewhere.  The defendants point out this claim was not addressed in the administrative proceedings in this matter and argue it should therefore be dismissed for failure to exhaust administrative remedies.  The defendants also argue

that because the alleged promises were made over seven years before this action was filed, the claim is barred by the applicable three-year statute of limitations. The plaintiff responds that this claim is not a claim for benefits but rather is a claim for breach of fiduciary that is not subject to the exhaustion doctrine, and that the limitations period did not begin to run until the plan administrators made their benefits determination.

To the extent the plaintiff seeks relief for breach of fiduciary duty under Section 1109, she has alleged no harm to the plan. To the extent she seeks equitable relief for herself, i.e., a modification of her retirement plan to conform to the alleged oral promise, "oral agreements or modifications to a pension plan are contrary to the express provisions of ERISA." *Cefalu v. B.F. Goodrich Company,* 871 F.2d 1290, 1296 (5th Cir. 1989). To the extent she seeks a declaration of benefits, her claim is a claim for benefits for which she failed to exhaust her administrative remedies before bringing the claim. In either case, Claim 6 will be dismissed, and the court need not address the statute of limitations issue.

### Claim 7

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by providing the participants with – and not rejecting – 2012 plan documents that contained a warning that the authors of the documents – Renaissance Benefit Advisors – does not provide legal or accounting consultation or advice, has provided the documents strictly in its capacity as an employee benefits consulting firm, and recommends the parties seek appropriately specialized professional consultation regarding the information in the documents. The defendants argue the claim fails to state a claim and is barred by the statute of limitations. The court agrees on both points.

The plaintiff fails to allege or seek recovery for any specific harm to her or the plan that resulted from the defendants' use of plan documents containing the subject warnings. Further, the plaintiff herself agreed to use the plan documents containing the subject warnings, signing her SERP Restatement Participation Agreement containing the warnings (and incorporating the SERP Restatement containing the warnings) on April 10, 2012. For purposes of the applicable statute of limitations set forth in 21 U.S.C. § 1113(2), the plaintiff had "actual knowledge" of the warnings on that date, well over three years before bringing this action. *See Coghlan v. Glickman,* 241 F.Supp.2d 643, 653 (S.D. Miss. 2001) ("The 'generally prevailing law' is that 'one is presumed to have read a contract (or any other document) that one signs.'") (*citing In re Cajun Electric Power Cooperative, Inc.,* 791 F.2d 353, 359 (5th Cir. 1986)). Claim 7 will be dismissed because it fails to state a claim and is time-barred.

### Claim 8

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by failing to ensure the 2012 plan did not contradict itself, in that the section of the plaintiff's SERP Restatement Participation Agreement providing for full vesting after 25 years is contradicted by the next section regarding early retirement. The defendants argue this claim fails to state a claim and is time-barred, and again the court agrees on both points.

The defendants concede the plaintiff became fully vested after 25 years, and the plaintiff does not allege or seek recovery for any specific harm to herself or the plan that resulted from the alleged contradiction in the subject document. Further, the plaintiff had actual knowledge of the subject provisions when she signed the document in 2012, well over three years before bringing this action. Claim 8 will be dismissed because it fails to state a claim and is time-barred.

## Claim 9

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by failing to determine what if any changes in benefits was caused by Lanier Robinson's death in 2006. The defendants argue the claim fails because the administrators did in fact determine, in response to the plaintiff's benefits determination request, that Mr. Lanier's death did not constitute a "change of control" that would affect plan benefits. The plaintiff replies, citing no authority and mirroring her claim in Count 4, that the determination should have been made upon Mr. Lanier's death in 2006. However, as the court found above with respect to Claim 4, because the plaintiff fails to allege or seek recovery for any harm to herself (unrelated to the denial of her claim for benefits) or to the plan that resulted from the timing of the administrators' determination that Mr. Lanier's death did not constitute a "change in control," Claim 9 fails to state a claim and will be dismissed.

## Claim 10

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by providing the participant with a document that contained a defective claims procedure, in that Section 7.4 of the SERP Restatement regarding review of an appeal makes reference to another section – Section 7.7 – that does not exist. The defendants argue this claim fails to state a claim and is time-barred, and the court agrees. The plaintiff fails to allege or seek recovery for any harm to herself (unrelated to the denial of her claim for benefits) or to the plan that resulted from this alleged defect, and the plaintiff had actual knowledge of it in 2012 when she signed her participation agreement to which the restatement is attached and incorporated by reference. Claim 10 will be dismissed.

## Claim 12

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by failing to grant her any meaningful review of her claim. The defendants argue the plan's claims procedure was followed and point out that the plaintiff cites no authority in the plan documents or elsewhere supporting her claim that the alleged acts and omissions of which she complains in Claim 12 constitute breaches of duty. In any event, the plaintiff fails to allege or seek recovery for any harm to herself (unrelated to the denial of her claim for benefits) or to the plan that resulted from the alleged meaningless review her claim, and as such Claim 12 will be dismissed for failure to state a claim.

## Claim 13

In this claim, the plaintiff alleges that the SERP Restatement is defective because it does not contain an arbitration clause, and that the defendants breached their fiduciary duty by intentionally removing that clause from the document. The defendants argue the claim fails to state a claim and is time-barred, and the court agrees. The plaintiff fails to allege or seek recovery for any harm to herself (unrelated to the denial of her claim for benefits) or to the plan that resulted from this alleged defect, and the plaintiff had actual knowledge of it in 2012 when she signed her participation agreement to which the restatement is both attached and incorporated by reference. Claim 13 will be dismissed.

## Claim 14

In this claim, the plaintiff alleges the defendants breached their fiduciary duty by failing to provide a written response to her formal written request for an explanation of the effect of Lanier Robinson's death relative to the plaintiff's benefits. In her response to the defendants'

motion to dismiss, the plaintiff acknowledges that she did in fact receive a written response and she withdraws this claim. Claim 14 will be dismissed.

## Claim 15

In this claim, the plaintiff alleges the plan administrators failed to comply with the procedural requirements set out in the plan documents. She also claims she is entitled to a retirement benefit in the amount of $917,535 in payments due immediately. The defendants argue the plaintiff fails to state a claim that the administrators failed to comply with the plan's procedural requirements because she provides no factual allegation or explanation as to how the requirements were not complied with. The defendants seek the dismissal of that portion of Claim 15, leaving her claim for retirement benefits to be determined in further proceedings. In response, the plaintiff states only, "Had the Defendants complied with procedural requirements of the SERP they would have reached a determination in favor of the Plaintiff in June 2017, as set forth in Paragraph 9 of the Second Amended Complaint." Docket 59 at 10.

It appears the plaintiff is referring to her allegation in Paragraph 9 of the Second Amended Complaint that at a board meeting on June 13, 2017, she presented to the board a letter, attached as Exhibit 2, requesting a meeting "to determine her benefits under the bank's non-qualified retirement program, commonly referred to by the Defendants as the 'BOLI.'" Docket 33 at 4. However, the attached June 13, 2017 letter actually requests that the board meet with the plaintiff and her legal counsel "to open discussions with you and the bank's legal counsel to plan for my retirement from the bank." Docket 33-2.

The procedures for claims administration are set forth in Article VII of the SERP Restatement. Docket 33-6. In no way can the plaintiff's letter be construed as a "claim for benefits" that would trigger the plan's claims procedure, nor does the claims procedure require

the administrators, upon the plaintiff's request, to meet with her and her attorney to discuss plans for her retirement. The plaintiff's unsupported and conclusory allegation in Claim 15 that the administrators failed to comply with the plan's procedural requirements fails to state a claim and will be dismissed, leaving the plaintiff's claim for immediate SERP benefits to be determined in further proceedings.

For the above reasons stated, each of the plaintiff's ERISA claims other than her claim for immediate SERP benefits fails as a matter of law, fails to state a claim, was brought prior to exhaustion of administrative remedies, and/or is time-barred. Those claims will be dismissed, and the court now turns to the defendants' motion to dismiss the plaintiff's state law claims.

## MOTION TO DISMISS STATE LAW CLAIMS

In this motion, the defendants seek the dismissal of Claims 16 through 19 of the Second Amended Complaint. The plaintiff brings Claims 16, 17, and 18 under state and federal common law, and she brings Claim 19 under state common law only. The defendants argue that federal common law provides no basis to pursue Claims 16, 17, and 18 and that all four claims are state law claims that are preempted by ERISA. In response the plaintiff concedes that the state law claims in Claims 16, 17, and 18 are preempted by ERISA, but she argues that they may be asserted nonetheless under federal common law as is alternatively pled in the Second Amended Complaint. The plaintiff argues the state law claim in Claim 19 is not ERISA-preempted.

### ERISA Preemption

Under ERISA, a participant or beneficiary in a regulated plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA's civil-enforcement scheme "completely preempts any state-law cause

of action that duplicates, supplements, or supplants an ERISA remedy." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 737 (5th Cir. 2015) (quoting *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.,* 579 F.3d 525, 529 (5th Cir.2009) (internal citation omitted)). ERISA additionally provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…." 29 U.S.C. § 1144(a). ERISA's preemption language "is deliberately expansive, and has been construed broadly by federal courts." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995) (citing *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1328-29 (5th Cir. 1992)). A state cause of action relates to an employee benefit plan whenever it has "a connection with or a reference to such a plan." *Hubbard*, 42 F.3d at 945 (quoting same).

Accordingly, the Court applies a two-pronged test to determine whether a state-law cause of action is preempted by ERISA. ERISA preempts a state law claim if (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship among traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004). ERISA does not preempt only state laws dealing with the subject matters covered by ERISA. *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1294 (5th Cir. 1989). Rather, ERISA's preemption of state law claims depends on the conduct to which such law is applied, not on the form or label of the law. *Cefalu*, 871 F.2d at 1294. Whether the state law cause of action sounds in tort or contract *per se* is irrelevant to the issue of ERISA preemption. *Lee v. E.I. DuPont de Nemours and Co.*, 894 F.2d 755, 758 (5th Cir. 1990). ERISA preemption may occur even though ERISA itself does not offer an aggrieved employee a remedy for alleged misrepresentations. *Lee*, 894 F.2d at 757

(citing *Cefalu*, 871 F.2d at 1292-95; *Degan v. Ford Motor Co.,* 869 F.2d 889, 893-95 (5ᵗʰ Cir. 1989)).

Because the plaintiff concedes ERISA-preemption of the state law claims in Claim 16, 17, and 18 but argues those claims may be asserted under federal law, the court will address those claims together.

## Claims 16, 17, and 18

In Claim 16, the plaintiff alleges the bank breached its contract of employment with the plaintiff by failing to provide her the agreed retirement benefits. In Claim 17, the plaintiff alleges she relied on the defendants' representations to her detriment and is entitled to retirement benefits and other damages under the doctrine of promissory estoppel. In Claim 18, the plaintiff alleges the defendants are liable to her for her retirement benefits and other damages under the doctrines of quantum meruit and unjust enrichment. The defendants argue there is no basis for these claims under federal common law. The court agrees.

"[F]ederal common law may be applied to fill 'minor gaps' in ERISA's text, as long as the federal common law rule created is 'compatible with ERISA's policies.'" *Coop. Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 329 (5th Cir. 2004) (citing *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts*, 954 F.2d 299, 304 (5th Cir.1992); *Rodrigue v. Western and Southern Life Ins. Co.,* 948 F.2d 969, 971 (5th Cir.1991) ("federal courts should create federal common law when adjudicating disputes regarding ERISA); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1297 (5th Cir.1989) ("federal courts may create federal common law governing employee benefit plans in order to supplement the statutory scheme")). However, "federal courts do not have authority under ERISA to create federal common law when that statute 'specifically and clearly addresses the issue before th[e] Court.'" *Id*. at 330 (citing

*Cefalu,* 871 F.2d at 1297 (refusing to apply federal common law to ERISA "because ERISA specifically and clearly addresse[d] the issue before th[e] Court"); *Rodrigue,* 948 F.2d at 971–72 (refusing to create federal common law rule that would allow employee to assert an estoppel-based argument against the Plan because ERISA "addresses estoppel claims") (citing *Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir. 1989) (power to create federal common law when adjudicating ERISA disputes exists only where ERISA preempts but does not address the issue) (citations omitted)). The court finds the law is clear that no federal common law cause of action exists for Claims 16 through 18.

As to the plaintiff's breach of contract claim in Claim 16, ERISA specifically provides relief for breach of contract claims involving an ERISA plan; therefore, "there are no 'interstitial gaps' in the text of ERISA on this issue that need filling by federal common law." *Goss v. Firestone Polymers, L.L.C.*, No. CIV.A. 1:04-CV-665, 2005 WL 1004717, at *13 (E.D. Tex. Apr. 13, 2005) (citing *Ogden*, 367 F.3d at 330). Because there is no gap in ERISA warranting the creation of federal common law to govern the plaintiff's breach of contract claim, this claim cannot survive.

Claim 17 asserts a cause of action for promissory estoppel for the plaintiff's detrimental reliance on the defendants' representations. Under ERISA, the Fifth Circuit has conclusively precluded claims based on oral modifications to benefit plans and has specifically held that "claims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension plans." *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989). The *Degan* court explained that

> ERISA expressly requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). In addition, the written plans must "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." *Id.* § 1102(b)(3).

> Thus, ERISA mandates that the plan itself and any changes made to it were to be in writing. The reasons for Congress's strictures in this area are obvious: Oral agreements would undermine Congress's goal of fashioning a comprehensive system of federal law designed to strengthen and protect the interests of employees in their expected retirement benefits.

*Id*. The Fifth Circuit refused to recognize an estoppel-based argument under federal common law based on ERISA's "emphatic preference for written agreements." *Id*. Therefore, there is no basis under federal common law for the plaintiff's claim for promissory estoppel.

Claim 18 asserts the defendants are liable to the plaintiff for her retirement benefits and other monetary damages under the doctrines of unjust enrichment and quantum meruit. In *Morales v. Pan American Life Insurance Company*, the Fifth Circuit declined to create a federal common law unjust enrichment claim, finding it would be inconsistent with ERISA's terms and policies. *Morales v. Pan Am. Life Ins. Co.*, 914 F.2d 83, 87 (5th Cir. 1990). Citing 29 U.S.C. § 1132(a), the *Morales* court explained that "ERISA's civil enforcement provision creates an exclusive remedial scheme focusing on the terms of the plan" and "there is no provision in § 1132 or elsewhere for quasi-contractual damages." *Id*.

Similarly, the plaintiff's quantum meruit claim references and relates to the ERISA plans at issue. Because her quantum meruit claim is simply a recharacterization of her claim for benefits, her "only remedy is under 29 U.S.C. § 1132(a)(1)(B)." *Goss*, at *23. Moreover, in order to recover under a theory of quantum meruit, there must be no express contract dealing with the services or materials provided, which is not the case here. *Id*. at *22 (citing *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 462 (5th Cir. 2003)). Accordingly, the plaintiff's federal common law quantum meruit claim is foreclosed. *Id*. at *24.

Because the state law claims in Claims 16, 17, and 18 are ERISA-preempted and there is no basis to bring those claims under federal common law, they will be dismissed.

**Claim 19**

In this claim, relying solely on Mississippi common law, the plaintiff asserts a claim for misrepresentation alleging that the defendants promised to increase her retirement benefits so that she would not leave the bank for another job elsewhere, that she reasonably relied on that representation by staying at the bank, and that the bank breached its promise. She claims she is entitled to damages including the amount of increased compensation and benefits she would have received had she taken the other job. The defendants argue this claim is ERISA-preempted because it clearly relates to the availability and amount of the plaintiff's SERP benefits and affects the relationship between her, the bank, and the SERP. The defendants also argue the claim is time-barred because the subject alleged promise was made in 2011, and the applicable three-year limitations period under Mississippi law had long since expired before the plaintiff brought her claim. Without reaching a conclusion as to the statute of limitations defense, the court concludes the claim is ERISA-preempted.

The conduct of which the plaintiff complains in Claim 19 includes the alleged promise by the bank and its directors to increase her benefits (by amending the subject ERISA plan); the plaintiff's reliance on this representation by not leaving the bank for a job elsewhere; and the bank's breach of its promise (by not amending the subject ERISA plan). The plaintiff claims her damages include the amount of increased compensation and benefits she would have received had she taken the other job (which could be calculated only by a determination of and comparison to the benefits to which she is entitled under the bank's subject ERISA plan). The court can only conclude that Count 19 has a connection with the bank's subject ERISA plan and therefore "relates" to that plan for preemption purposes.

Citing caselaw from outside the Fifth Circuit, the plaintiff argues her claim is not preempted because the damages would be paid with the bank's funds, not from the retirement plan. However, the Fifth Circuit rejected this argument in *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1291-92 (5th Cir. 1989), in which the plaintiff Cefalu claimed he detrimentally relied on his employer Goodrich's representations regarding his retirement benefits if he were to purchase a franchise from Goodrich rather than work for the company which purchased the division in which Cefalu was employed. Cefalu argued his claim did not "relate to" an employee benefit plan for preemption purposes because he sued Goodrich as his former employer and present franchiser but did not sue Goodrich's ERISA plan or seek recovery from the plan assets. *Cefalu*, 871 F.2d at 1292-93. The Fifth Circuit found Cefalu's argument to be without merit, concluding his claim had a "definite connection" to Goodrich's employee benefit plan. *Id.* at 1294.

Of the cases cited by the plaintiff in support of her argument against ERISA-preemption of Claim 19, only one was decided in the Fifth Circuit, and it is distinguishable. In *Smith v. Texas Children's Hospital*, 84 F.3d 152, 153-54 (5th Cir. 1996), the plaintiff Smith claimed her employer Texas Children's Hospital induced her to leave her job at another hospital for a job at Texas Children's Hospital by representing to her that she could transfer all her employment benefits, after it was determined she did not qualify for benefits at Texas Children's Hospital. The Fifth Circuit found that Smith's claim "for vested benefits that she had acquired while employed with her original employer, but then relinquished in reliance upon Texas Children's alleged misrepresentations" was not preempted. *Smith,* 84 F.3d at 157.

The distinction in the instant case, of course, is that the plaintiff does not claim she lost or relinquished any vested or accrued benefits in reliance on the bank's alleged misrepresentation. This is a crucial distinction that undermines the plaintiff's reliance on *Smith. See also Brown v.*

*United Parcel Service,* 237 F.3d 631 (5th Cir. 2000) (unpublished) (finding plaintiff's reliance on *Smith* misplaced and her negligent misrepresentation and promissory estoppel claims against her former employer preempted by ERISA where "she never argues that she had a vested right to anything other than the Plan benefits").

A finding of ERISA preemption of Claim 19 is further supported by the parties' dispute over whether the limitations period for that claim expired before she brought the claim. The alleged misrepresentation occurred in 2011, but the plaintiff argues the limitations period did not begin to run until 2016 when she obtained copies of the plan documents and discovered the plan had not been amended as was allegedly promised in 2011. To benefit from the discovery rule under Mississippi law, "a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury." *Wayne General Hospital v. Hayes,* 868 So.2d 997, 1001 (Miss. 2004). "The focus is on the time that [one] discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury." *Hayes,* 868 So.2d at 1001 (quoting *Smith v. Sanders,* 485 So.2d 1051, 1052 (Miss. 1986)).

The defendants dispute that the plaintiff exercised reasonable diligence in obtaining the plan documents. Of course, the plaintiff had a right to obtain a copy of the plan documents under ERISA. 29 U.S.C. § 1024(b)(4). A determination whether the plaintiff exercised her right under ERISA and did so in a reasonably diligent manner addresses an area of exclusive federal concern and directly affects the relationship among traditional ERISA entities. Claim 19 is preempted and will be dismissed.

<u>CONCLUSION</u>

For the above reasons, the defendants' Motion to Dismiss State Law Claims and the defendants' Partial Motion to Dismiss ERISA Claims are **GRANTED**. All claims in the Second

Amended Complaint other than the plaintiff's claim for immediate SERP benefits stated in Claim 15 are hereby **DISMISSED**.

**SO ORDERED**, this the 10th day of June, 2019.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE